Wood, J.
This case was reserved in the county of Muskingum, at-the November term, 1841. The Supreme Court for that county directed an entry to be made on the journal in these words:
“ Ordered, that the prosecuting attorney file an information in this court, preferring charges for malpractice against Samuel Chapman, Jr., one of the attorneys of this court; that notice, pur•suant to the statute, be forthwith issued and returned, and leave is given until the 25th of November inst. to take depositions, and this matter is adjourned to the next session of the court in bank for further order.”
*By virtue of this entry, the prosecuting attorney filed, in ■substance, the following specifications :
1. That on November 4,1840, a cortain suit was pending in the *368 Supreme Court of Muskingum county, in which said Chapman was plaintiff, and Charles C. Converse defendant, and in which Chapman filed his declaration, and therein charged the said Converse with speaking and publishing of him, said Chapman, that he had stolen from the files of the court of common pleas of Muskingum county a certain indictment of the State of Ohio, against James Alexander and others, for the crime of robbery, and that, the said Converse, by way of defense and justification, set forth and charged in his second plea, that the said Chapman, on November 20, 1839, did take, steal, and carry away a certain indictment of the State of Ohio v. James Alexander and others, for the crime of robbery, etc.
That the said Converse, in his fourth plea to said action, charged and set forth, that the said Chapman, being retained as such attorney, etc., to defend the said Alexander and others on said indictment, on November 26, 1839, etc., improperly, dishonestly, furtively, wickedly, and contrary to his professional duty, did take away, secrete, and withhold from the custody of E. T. Cox, clerk of the court of common pleas, the said indictment, for the purpose of procuring the discharge of the said Alexander and others therefrom; that, at the November term, 1841, at the Supreme Court, etc., the aforesaid issues came on to be tried by a jury, and the jury, on their oaths, etc., did find and declare the matters and things in the said plea to be true, and, on which finding of the jury, the Supreme Court rendered judgment, etc.
2. Said Chapman, so being such attorney, etc., at, etc., did improperly, dishonestly, unlawfully, and wickedly take, carry away, and secreto and withhold from said Cox, clerk as aforesaid, the said indictment, etc., contraiy to his duty as such attorney, etc.
3. That said Chapman did steal said indictment, etc.
*4. That said Chapman took and secreted-said indictment, and withheld it from said Cox, to hinder and obstruct public justice, etc. These are, substantially, the specifications, of which Chapman insists he is not guilty.
The statute which is supposed to authorize this inquiry, is section 4 of the act entitled “an act to regulate the admission and practice of attorneys and counselors at law,” Swan’s Stat. 96, in these words: “ The supreme court, or court of common pleas, shall have power to suspend any attorney or counselor at law, from *369 practicing in their respective courts, for misconduct in office, or for good cause shown.”
The statute, it will be observed, is broad in its terms, and casts upon us the protection of the moral and official integrity of the profession. This court should not hesitate for a moment to exercise the discretion with which it is clothed by the law, to purify the bar of official delinquency and base immorality.
This is due to its own dignity, and to preserve the character and integrity of the whole profession from scandal and reproach. The discretion, however, with which we are invested, is by no means arbitrary, but to be applied according to legal rules. The allegations and the proofs are to be considered in the usual way, and they must correspond, substantially at least, or the accused must go acquitted.
The first specification in this case must have been framed upon the belief, that the pleas of justification, in the action of slander, being found to be true, was tantamount to a conviction for a felony. If so, the rule is clear, as stated by the courts, that such a conviction is, per se, a forfeiture of the office of an attorney. In such a case, Lord Mansfield says, “ we have consulted all the judges, and, on application, struck the name of an attorney from the roll.” Rex v. Brownsell, Cowp. 830. We are of the. same opinion, that one, convicted of a felony, is an unfit person to continue in the profession ; and whether committed in his private or official character, it would be good cause for his suspension. The Bank of New York v. James Stryker, 1 Wheeler’s Cr. Cas. 330. Chapman, *however, does not occupy this position. He has never been prosecuted for larceny; but, if he has committed a larceny, though not. convicted, or if he have committed any offense of a base nature, or any act as an attorney, which his oath of office and his fidelity in the profession are not to be confided in, it is good cause of suspension within the provisions of the statute. 1 Wheeler’s Cr. Cas. 322; 1 Bac. Abr. 306; 1 Hawk. P. C. 277, 279.
The record in the slander suit, however, finding the pleas of justification true, is, in this ease, by no means conclusive evidence of the facts set up in those pleas. The record is not between the same parties, and if admitted at all, any presumption, arising from, it may be rebutted by other proof. The parties were aware of this, and a great number of depositions have been taken,, both by those-who prosecuted and by the accused. In the opinion of a majority *370 of the court, the proof establishes the fact, that Chapman had the indictment in his possession ; that he kept it a long time; that ho was inquired of and denied all knowledge of it, and that he was, at the same time, the attorney for Alexander and others ; that he afterward returned the indictment to the clerk’s office, secretly, and placed it in the.¡proper files. If the evidence were to close here, there would be but one opinion — that of guilt; that the charge of larceny, of secreting the indictment, withholding it from the clerk, and attempting to obstruct and hinder public justice, wore sustained. It, however, appears from the evidence, equally clear, to a majority of the court, that Chapman neither stole the indictment» nor knew that he had it, when inquiry was made; that it was probably mislaid ; but, as soon as discovered, he replaced it secretly, upon the files. This return of the indictment, secretly, can not be commended. It deserves severe rebuke; but still, I can hardly think it evinces, under the circumstances, any criminal design. Had his intent boon criminal, Chapman would doubtless have destroyed the indictment, and not hazarded exposure by its return. He ought, truly and irankly, to have admitted his error, and delivered the indictment to the clerk. There had, however, been *crimination and recrimination; the whole elements of society seem to have been agitated and disturbed, and it is, after all, not very remarkable that Chapman had not sufficient moral courage (to admit he had the indictment, and to openly return it.
■ Lot us then, briefly, see how this case stands. Chapman is .charged with being convicted of stealing the indictment. He is ..charged with secretly taking it, with holding and secreting it .‘from the clerk, and with intention to obstruct and hinder public justice.
The truth is, he had it innocently, ho knew not it was in his ■possession, and denied having it; and when found, he returned it secretly, and, with this secret return, if criminal, immoral, or fraudulent, he is not accused. It is, therefore, the opinion of a majority of the court, (that the charges are not sustained by the proof, and that they should be dismissed. Rule discharged.